


**SO ORDERED.**

**SIGNED August 10, 2020.**

**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

---

WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| In re:<br>Robert Gray, Jr. and<br>Michelle Lyvetta Gray,<br>*Debtors* | Case No. 19-50030<br><br>Chapter 13 |
| Louisiana Workforce Commission,<br>*Plaintiff*<br><br>v.<br><br>Robert Gray, Jr.,<br>*Defendant* | Judge John W. Kolwe<br><br>Adv. Proc. No. 19-5007 |

**RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, the Louisiana Workforce Commission ("LWC"), filed a Motion for Summary Judgment (ECF #21), seeking a judgment declaring that the $5,232.37 debt owed to LWC by Debtor Robert Gray, Jr. is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) because it was obtained by false pretenses, false representations, and actual fraud. For the reasons set forth below, the Court will grant the Motion.[1]

[1] The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(I), and venue is proper under 28 U.S.C. § 1409(a).

## Summary Judgment Standard

LWC's Motion is subject to the usual summary judgment standard set out in Fed. R. Civ. P. 56, made applicable to adversary proceedings through Fed. R. Bankr. P. 7056. The fundamental principle is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(c) sets out the procedures used to support a Motion for Summary Judgment and allows a party to support a factual position by, among other things:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Also relevant are LR56.1 and LR56.2 of the Western District, made applicable to the Bankruptcy Court through LBR 7056-1(c). LR56.1 requires a Motion for Summary Judgment to "be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." LR56.2 requires any Opposition to include a "statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."

In compliance with LR56.1, LWC filed a five-page Statement of Undisputed Facts (ECF #21-1) with its May 26, 2020 Motion for Summary Judgment that supports its factual contentions with citations to record evidence, including exhibits attached to the Motion for Summary Judgment. The Defendant did not file an Opposition. Instead, his wife and Co-Debtor Michelle Gray (not a defendant in this

adversary proceeding) filed a short letter on July 17, 2020 (ECF #23), claiming she was "trying to gather all the information need[ed] to correct this" but due to Mr. Gray's "recent health conditions" had not been able to do so. Notably, this request for more time came nearly a year after the Defendant's Answer (ECF #13), in which he stated that he was attempting to gather documents at that time. The Court finds that the Defendant has had ample time to obtain any necessary evidence in support of his position and denies the request for additional time, particularly given the Defendant's failure to set out any argument against LWC's fraud allegations in any pleading filed with the Court.

Because LWC's Statement of Undisputed Facts is not only uncontested but contains citations to record evidence supporting its contentions, the Court will rely on those facts for this ruling.

## **Background**

Mr. and Mrs. Gray filed their Chapter 13 Petition on January 8, 2019. On January 31, 2019, LWC filed a Proof of Claim in the bankruptcy case in the amount of $5,232.37. LWC commenced this adversary proceeding by filing its Complaint on May 20, 2019 (ECF #1). LWC, which is a governmental agency of the State of Louisiana that pays unemployment benefits to unemployed workers, claims that Mr. Gray obtained unemployment benefits during periods when he was in fact employed. LWC claims the Debtor is obligated to repay those funds and that the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because it was fraudulently obtained. As noted, although Mr. Gray filed a short document titled an Answer on August 19, 2019 (ECF #13), it does not dispute anything in the Complaint other than the amount due. The Answer's one substantive paragraph reads in full:

> I dispute the amount Due [sic]. I have requested documentation from Pioneer Well Service, LLC. They have promised me that they would provide the documentation to me. As of this date, I have not received the documentation requested. Once I receive the documents, I will file them with the Court to prove that the dollar amount owed is incorrect.

*See* Complaint (ECF #13).

On May 26, 2020, LWC filed this Motion for Summary Judgment (ECF #21). Based on the Statement of Undisputed Facts (ECF #21-1) and the summary judgment evidence attached as exhibits, the following facts are undisputed:

- Mr. Gray applied online with LWC for unemployment benefits on July 7, 2011 and September 14, 2011.
- On December 13, 2012, LWC's Investigation Unit received a request to investigate Mr. Gray's claim for unemployment benefits because LWC received a notification that Mr. Gray was employed by Pioneer Well Services, LLC ("Pioneer").
- On December 14, 2012 Mr. Gray was advised by letter that he may have received unemployment benefits to which he was not entitled. He was asked to provide a statement as to why his correct wages were not reported and to provide check stubs for January 1, 2012 through May 10, 2012.
- Mr. Gray did not respond to the request by the December 20, 2012 deadline.
- To receive the weekly unemployment benefits, Mr. Gray had represented that he was unemployed, had no earnings from employment, and/or that all income was accurately reported.
- LWC's investigation concluded that Mr. Gray worked at Pioneer for 17 weeks while also receiving unemployment benefits from LWC in the amount of $247.00 per week, for a total of $4,199.00.
- As a result of LWC's conclusion that Mr. Gray fraudulently received benefits, he was disqualified for some time from receiving further benefits, and a fraud overpayment was assessed against him under Louisiana law, with a formal Assessment entered against him on July 24, 2013, which is tantamount to a judgment under La. R.S. § 23:1748.
- Mr. Gray has never disputed in any court filing that he applied for unemployment benefits while working, only the amount of the debt.

- LWC's records, attached to the Motion for Summary Judgment as Exhibit 2 (ECF #21-4), and Pioneer's certified table showing wages paid to Mr. Gray (and other employees whose names are redacted) during the period in question, attached as Exhibit 3 (ECF #21-5), support LWC's contention that LWC paid Mr. Gray $247.00 per week while Mr. Gray was employed and earning wages from Pioneer.
- LWC claims that it justifiably relied on Mr. Gray's representations in paying him the $247.00 weekly unemployment benefit, and there is nothing in the record to contradict that, particularly given how quickly LWC acted to investigate Mr. Gray when it discovered he was apparently employed by Pioneer.
- Mr. Gray was assessed a penalty of $1,049.00 by LWC for wrongfully obtaining the $4,199.00, for a total amount owed of $5,248.00. Subtracting a reimbursement payment of $15.63, the net amount owed on the debt is $5,232.37, the amount claimed by LWC in its Proof of Claim and this nondischargeability action. *See* LWC Records, Exhibit 2 (ECF #21-4).

Based on the above, LWC prays that the $5,232.37 debt owed by Mr. Gray for the wrongfully obtained unemployment benefits be declared nondischargeable under § 523(a)(2)(A) because it was based upon false pretenses, false presentations, and actual fraud.

**Applicable Law**

Section 523(a)(2)(A) of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, 1192 [1] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—…
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

*Id*.

In *In re Duhon*, No. 12-5057, 2013 WL 451070170 (Bankr. W.D. La. Aug. 26, 2013), this Court summarized the standards for determining whether a debt is nondischargeable under § 523(a)(2)(A) as follows:

> Section 523(a)(2)(A) provides that "money, property, services, or an extension, renewal, or refinancing of credit" that is obtained through "false pretenses, a false representation, or actual fraud" is subject to exception from a debtor's discharge. 11 U.S.C. § 523(a)(2)(A). In order for a debt to fall within section 523(a)(2)(A), the debtor's fraud or false representation must involve the debtor's "moral turpitude or intentional wrong." *Vizzini v. Vizzini (In re Vizzini),* 348 B.R. 339, 343 (Bankr. E.D. La. 2005), aff'd, 234 Fed. Appx. 234 (5th Cir. 2007) (quoting *In re Chavez,* 140 B.R. 413, 419 (Bankr. W.D. Tex. 1992)). The Fifth Circuit has "distinguished between actual fraud on the one hand and false pretenses and misrepresentations on the other" in describing the elements required for a nondischargeability action under section 523(a)(2)(A). *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1292 (5th Cir.1995); *In re Holdaway,* 388 B.R. 1767, 772 (Bankr. S.D. Tex. 2008). "False pretenses" under section 523(a)(2)(A) requires a "knowing and fraudulent falsehood that describes past or current facts and is relied upon by the other party." *See RecoverEdge,* 44 F. 3rd at 1292…

2013 WL 4510701, at *2.

The Fifth Circuit's old multi-factor test (which was also set out in *Duhon*) for determining whether the Debtor had committed actual fraud included a requirement that the Debtor have made a misrepresentation. In *Husky Intern. Electronics, Inc. v. Ritz*, 136 S. Ct. 1581 (2016), the Supreme Court overruled that line of cases by holding that a Debtor need not make a misrepresentation to commit actual fraud under § 523(a)(2)(A).[2] Following *Husky*, a court must construe the phrase "actual fraud" according to more general common law definitions that cover behavior broader than misrepresentation:

[2] *See In re Ritz*, 832 F.3d 560, 565 n.3 (5th Cir. 2016) (recognizing that *Husky* overruled the line of Fifth Circuit actual fraud cases requiring an actual misrepresentation).

> This Court has historically construed the terms in § 523(a)(2)(A) to contain the "elements that the common law has defined them to include." *Field v. Mans,* 516 U.S. 59, 69, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995). "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." *Neal v. Clark,* 95 U.S. 704, 709, 24 L. Ed. 586 (1878). "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." *Ibid.* Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."
>
> Although "fraud" connotes deception or trickery generally, the term is difficult to define more precisely. See 1 J. Story, Commentaries on Equity Jurisprudence § 189, p. 221 (6th ed. 1853) (Story) ("Fraud ... being so various in its nature, and so extensive in its application to human concerns, it would be difficult to enumerate all the instances in which Courts of Equity will grant relief under this head"). There is no need to adopt a definition for all times and all circumstances here because, from the beginning of English bankruptcy practice, courts and legislatures have used the term "fraud" to describe a debtor's transfer of assets that, like Ritz' scheme, impairs a creditor's ability to collect the debt.

*Husky*, 136 S. Ct. at 1586-87.

A creditor bears the burden of proving, by a preponderance of the evidence, that the debt is nondischargeable under § 523(a)(2)(A), whether due to a debtor's false pretenses/false representations or actual fraud. *See Duhon,* 2013 WL 4510701, at *2–3.

**<u>Analysis</u>**

The undisputed facts show that Mr. Gray applied for unemployment benefits with LWC while employed by Pioneer, that he represented that he was unemployed even during periods he was employed by Pioneer and earning wages, that LWC relied on his representations that he was unemployed in order to determine his eligibility to receive unemployment benefits, and that he actually received the funds. The record

further shows that Mr. Gray has never disputed the fact that he was employed by Pioneer during the period in question, in which he received weekly unemployment benefits from LWC in the amount of $247.00 per week for 17 weeks, nor has he disputed any fact asserted by LWC other than the amount of the debt, for which he has proposed no alternative and has offered no documentation. The evidence before the Court, including LWC's records showing and Pioneer's records, shows that he was in fact employed by Pioneer for 17 weeks during which he received weekly unemployment benefits from LWC. Moreover, he certainly would have known he was employed by Pioneer when he represented to LWC that he was unemployed.

Based on the undisputed facts, the Court concludes that LWC has proved the debt is nondischargeable under both the false pretenses/false representations prong and actual fraud prong of § 523(a)(2)(A). With respect to the false pretenses/false representations prong, the Court concludes that Mr. Gray made a "knowing and fraudulent falsehood that describes past or current facts and is relied upon by the other party." *Duhon*, 2013 WL 4510701, at *2 (quoting *RecoverEdge,* 44 F. 3rd at 1292). With respect to actual fraud, the Court concludes that Mr. Gray's behavior in applying for unemployment benefits for 17 weeks while already employed evinces "moral turpitude or intentional wrong" and constitutes fraud under any standard commonly applied by courts within the meaning of *Husky*. Accordingly, the Court concludes that the $5,232.37 debt owed to LWC is nondischargeable under § 523(a)(2)(A), and that LWC's Motion for Summary Judgment should be granted.

**<u>Conclusion</u>**

For the reasons set out above, LWC's Motion for Summary Judgment (ECF #21) is GRANTED. LWC shall submit a judgment in conformity with this ruling within ten (10) days.

# Notice Recipients

District/Off: 0536−4 | User: mcomeaux | Date Created: 8/10/2020
Case: 19−05007 | Form ID: pdf6 | Total: 5

**Recipients of Notice of Electronic Filing:**
aty Stacey Wright Johnson swright−johnson@lwc.la.gov

TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
pla Louisiana Workforce Commission 1001 North 23rd Street Baton Rouge, LA 70804
dft Robert Gray, Jr. P.O. Box 137 Morrow, LA 71356
intp Keith A. Rodriguez POB 3445 Lafayette, LA 70502−3445
ust Office of U. S. Trustee 300 Fannin St., Suite 3196 Shreveport, LA 71101

TOTAL: 4